Thomas E. Fraysse SBN 104436
Eryk R. Gettell SBN 245245
**KNOX RICKSEN LLP**
1300 Clay Street, Suite 500
Oakland, California 94612-1427
Telephone: (510) 285-2500
Facsimile: (510) 285-2505

Attorneys for Plaintiff
SEAN S. MAY, M.D.



## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN S. MAY, M.D.<br><br>Plaintiff,<br><br>vs.<br><br>UNUMPROVIDENT CORPORATION, THE PAUL REVERE LIFE INSURANCE COMPANY, and UNUM GROUP, inclusive,<br><br>Defendants. | Case No. C09-01537 VRW ADR<br><br>**COMPLAINT FOR:**<br>1. **BREACH OF CONTRACT**<br>2. **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br>3. **FRAUD**<br>4. **BUSINESS AND PROFESSIONS CODE SECTION 17200**<br>5. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>6. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SEAN S. MAY, M.D. alleges:

### I. JURISDICTION AND VENUE

1. Pursuant to Title 28, United States Code, Section 1332(a), this Court has subject matter jurisdiction because the amount in controversy in this civil action exceeds $75,000.00 exclusive of interest and costs, and there is complete diversity between plaintiff and the defendants, and each of them.

2. Venue is proper in this district pursuant to Title 28, United States Code, Section 1391 (a) and (e), in that a substantial part of the events or omissions giving rise to the claims herein

alleged occurred within the Northern District of California.

## II.   PARTIES

3. Plaintiff DR. SEAN S. MAY (hereinafter "Dr. May" and/or "plaintiff") is a resident of the County of Alameda, State of California.

4. At all times herein relevant, defendant UNUMPROVIDENT CORPORATION was a corporation transacting the business of individual disability insurance, organized and existing under the laws of the State of Delaware with its principal place of business in the City of Chattanooga, State of Tennessee. Defendant UNUMPROVIDENT CORPORATION and defendant UNUM GROUP are the same corporation – defendant UNUMPROVIDENT CORPORATION announced that it had changed its name to "UNUM GROUP" on or about January 17, 2007, as part of a larger branding initiative undertaken by the company. Defendant UNUMPROVIDENT CORPORATION and defendant UNUM GROUP shall collectively be referred to hereinafter as "UnumProvident" and/or "defendants."

## III.   FACTUAL ALLEGATIONS

5. Dr. May is a 64-year-old (DOB: 09/06/43) medical doctor, duly licensed as a physician and surgeon by the State of Tennessee and State of California. For twenty-three years, to and including May 1999, his usual, regular or "own occupation" was working as a gastroenterologist.

6. In or around 1979, Dr. May learned that defendants offered various types of individual disability insurance policies. The policies would pay monetary benefits for life in the event of a disability. To provide peace of mind and financial security for himself and his family in the event of total disability, Dr. May purchased two policies of individual disability insurance from defendants. The first policy was an individual disability income policy that promised to compensate Dr. May in the event he became totally or partially disabled and unable to work. The second policy was an overhead expense disability policy that promised to cover Dr. May's business expenses in the event he became totally or partially disabled and unable to work. Attached as Exhibit "A" to this Complaint, and incorporated by this reference, is a true and correct copy of the individual insurance policy, No. 00863857, ("Individual Disability Policy"). Attached as Exhibit

"B" to this Complaint, and incorporated by this reference, is a true and correct copy of the overhead expense disability policy, No. 00380422, ("Business Overhead Policy").

7. The polices are "own occupation" polices, meaning that defendants have agreed to pay certain benefits in the event that Dr. May became totally or partially disabled from his own specific occupation, i.e. gastroenterologist, as opposed to any occupation for which he is reasonably suited by education, training and experience. The defendants also represented that the policies are "non-cancelable and guaranteed renewable."

8. Defendants represented that in exchange for the payment of agreed premiums, they would provide the disability insurance policies to Dr. May, providing him with benefits in the event that he became totally or partially disabled and unable to perform his regular occupation as a gastroenterologist. Based upon the representations of the agents and employees of defendants, and with the assurance that he would have peace of mind knowing that he would be protected economically and financially in the event of physical or mental disability, Dr. May reasonably relied on the representations and entered into the Individual Disability Policy and the Business Overhead Policy attached hereto as Exhibits "A" and "B." In securing the two insurance policies from defendants, Dr. May reasonably expected that defendants would honor the commitments they made in the insuring agreements in the event of total or partial disability from his regular occupation as a gastroenterologist.

9. Thereafter, and without fail, Dr. May regularly and faithfully paid his insurance premiums and performed each act required on his part to keep the policies in full force and effect. He intended and expected thereby to be assured financial and economic security in the event that he became totally or partially disabled or residually disabled from his regular occupation as a gastroenterologist.

10. At all times herein relevant, Dr. May's regular occupation has been gastroenterologist with responsibilities including but not limited to examining and diagnosing disorders and diseases of the digestive system, consulting with patients to determine appropriate courses of treatment, recommending and ordering tests to determine the extent of illness and performing various medical procedures such as endoscopies related to the digestive system. An

endoscopy is a medical procedure wherein the physician inserts a long tube into the patient's body to assess the patient's interior organs. Dr. May constantly needed to use both hands and make highly repetitive motions during these endoscopies. When performing an endoscopy, Dr. May would control the endoscope with his left hand and guide it into the patient's body with his right hand. Dr. May performed approximately 200 endoscopies on patients per month, each taking anywhere from ten minutes to over one hour to complete.

11.     In or around May 1999, after twenty-three years of working as a gastroenterologist, generalized pustular psoriasis erupted in Dr. May's lower extremities. Generalized pustular psoriasis is a severe, acute, generalized, sometimes fatal, erythematous pustular eruption in patients with mild to psoriasis or in those withy psoriatic arthritis or exfolliative, which is accompanied by high fever, leukocytosis, hypocalcaemia, arthralgia, malaise, and other systemic symptoms. Dr. May's skin was painful, red, inflamed, swollen and covered in lesions and pustules (collections of puss underneath the skin). Due to Dr. May's generalized pustular psoriasis, Dr. May has been totally disabled from his regular or "own occupation," as a gastroenterologist. At all times herein relevant, Dr. May's condition has created significant limitations (what he can't do) and restrictions (what he shouldn't do) such that he cannot perform the material and substantial duties of a gastroenterologist in the usual and customary way with reasonable continuity.

12.     At all times herein relevant, Dr. May has been under the care of physicians who hold the opinion that he is totally disabled from working as a gastroenterologist. At all times herein relevant, defendants, and each of them, have known that Dr. May is totally disabled from his regular occupation and that he is entitled to benefits as promised in his policies.

13.     On or about February 18, 2000, Dr. May submitted claims with defendants under his Individual Disability and Overhead Business polices. Dr. May also notified defendants that he would be shutting down his practice on May 1, 2000 due to his totally disability.

14.     Since February 18, 2000, Dr. May has cooperated and complied with all reasonable requests made by defendants in connection with his claims for disability benefits, even to the extent of providing defendants with the name, address and telephone number of each

and every treating physician, signing authorizations for the release of records, providing defendants with privileged and private material, and submitting to an independent medical examination. Dr. May's physician even submitted multiple letters to defendants wherein he opined that Dr. May was totally disabled.

15. In or around August 2000, defendants informed Dr. May that they had determined to deny both of Dr. May's disability insurance claims.

16. Dr. May was shocked and dismayed when he discovered that defendants had determined to deny both of his claims. He had dutifully paid his monthly premiums over the past twenty-three years to protect himself and his family in the event that he became unable to work. Defendants took Dr. May's premiums each month with the promise that he would be compensated in the event he became totally or partially disabled. Yet when Dr. May was actually stricken with a painful disease making it impossible for him to continue with the own occupation, defendants did everything in their power to deny his claim and withhold his rightful benefits.

17. At the time the initial denial occurred, Dr. May was unaware that he was a victim of a fraudulent scheme undertaken by defendants designed to deny claims made under individual disability policies regardless of the merits of the claim. Beginning in the early 1990's, defendants, and their subsidiaries began regularly and systematically engaging in aggressive, unethical, improper and illegal claims practices in connection with claims made under individual disability policies. The practices were developed at Provident Life and Accident Insurance Company under the leadership of a managing agent, Ralph Mohney. The practices undertaken include pressuring claimants to settle for a fraction of total benefits based on pretext or manufactured disputes, insisting upon "objective medical evidence" of a disability even when the policy did not require such evidence, building a stable of biased "independent medical examiners" and "in-house" reviewers who would support claim denials, and holding regular "round table meetings" with lawyers, doctors and claims handlers designed to "triage" the most expensive claims toward a denial of benefits, regardless of the merits of the claim. The purpose of the aggressive, unethical, improper and illegal claims practices was to "scrub" the company's

liability for expensive and non-cancelable "own occupation" disability policies. By doing so, the company would be able to reduce reserves mandated by regulation and make the individual disability block of business profitable. The aggressive, unethical, improper and illegal claims practices were euphemistically characterized by UnumProvident as "best practices." These so-called "best practices" were undertaken by UnumProvident in its own economic interests and with a conscious disregard of the rights of disabled policyholders or the contractual obligations contained in policies issued by UnumProvident, its subsidiaries and other insurance companies with which it had entered into contractual agreements to undertake the handling and administration of claims.

18.  On information and belief, and at all times herein relevant, defendants also systematically ignored opinions and documents which supported Dr. May's claims, and instead, relied on opinions rendered by non-treating record reviewers who were employed by defendants ostensibly as "consultants," yet were charged either expressly or impliedly with the task of concocting reasons to deny claims. As a matter of custom and practice, defendants failed to conduct a reasonable investigation of Dr. May's claims and based on their decision to wrongfully deny benefits on the opinion or opinions of biased in-house consultants, all for financial gain and in conscious disregard of their obligations under the law to Dr. May.

19.  Dr. May was just one of the many victims of defendants' fraudulent and deceptive scheme. Rather than adhering to the mandate of well-established appellate case law in the State of California, as well as the provisions of the California Insurance Code and the California Code of Regulations concerning the handling of claims, as well as state law in most states, which at all times was known to the managers and employees of defendants who handled Dr. May's claim, the employees and managers of defendants handling Dr. May's claim instead intentionally chose to follow the so-called "best practices" established by Provident Life and Accident Insurance Company in the early 1990's, which led to numerous lawsuits, punitive damage verdicts, and regulatory enforcement, as described above. Knowing full well that they had a duty to conduct a thorough investigation of the claim, giving as much consideration to the interests of Dr. May as to the interests of defendants, the employees of defendants conducted a

one-sided investigation with the intent to either falsely manufacture a dispute sufficient to either pay a small fraction of the actual value of the claim or to deny the claim outright. In doing so, defendants, and each of them, ignored all descriptions of restrictions, limitations and job duties as described by Dr. May; ignored the findings and opinions of the treating physicians; used their own biased "independent" medical examiner and ignored clear evidence supporting the claim. Instead of conducting an investigation and evaluating the matter by giving as much consideration to the interests of Dr. May as to the interests of defendants, the employees and managers of defendants set this matter up for a denial by purposefully ignoring evidence and avoiding a thorough investigation calculated to support the claim.

20. Predictably, policyholders like Dr. May sued as a result of these aggressive, unethical and illegal claims practices undertaken by UnumProvident and its subsidiaries. UnumProvident, however, factored claims and lawsuits into its scheme, plan or design, generally taking the approach of paying past benefits owed and a small fraction of the present value of future benefits to settle litigation. The conduct of UnumProvident and its subsidiaries, however, proceeded to trial in several matters, including two within the Northern District in which juries awarded punitive damages based on findings that the conduct by the insurance company was malicious, oppressive or fraudulent by clear and convincing evidence. In 2002, U.S. Magistrate James Larson of this Court upheld a $7.67 million dollar verdict in favor of disabled policyholder Joan Hangarter, and in doing so, stated that the insurer had engaged in a wide range of questionable activity to avoid paying legitimate claims. Later, the Ninth Circuit Court of Appeals filed an opinion in the matter of *Hangarter v. Provident Life and Accident Insurance Company, The Paul Revere Life Insurance Company and UnumProvident Corp.*, (2004) 373 F.3d 998, on June 25, 2004, upholding the verdict as to the monetary award, including the imposition of punitive damages. Then, on January 24, 2003, a Marin County jury returned a $31.7 million dollar verdict against UnumProvident and in favor of Dr. Randall Chapman, a disabled Novato, California eye surgeon who sued in 2001, after UnumProvident refused to pay him benefits under an individual "own occupation" policy that had been issued in the 1980's.

21. The scheme, plan or design to defraud policyholders also drew the interest of state

insurance regulators throughout the United States. In November of 2004, UnumProvident and its subsidiaries entered into a Regulatory Settlement Agreement (hereinafter "RSA") with 48 state insurance regulators. Among other components of RSA, UnumProvident agreed to enhance its claim procedures and add "new good faith claim objectives," including giving weight to both objective and subjective evidence of impairment, along with appropriate consideration of the treating doctor's opinion; selecting unbiased, financially disinterested, fully-trained and skilled medical examiners for all "independent medical examinations"; requiring all "in-house" doctors be skilled, trained and have all of the insured's medical information in hand before making impairment findings; and requiring "rigorous training" on the new claim objectives to ensure best claim practices with vigilant monitoring and oversight.

22. In October of 2005, the California Department of Insurance and UnumProvident reached a settlement of California's ongoing market conduct examination relating to disability claims handling practices. In addition to incorporating the RSA by reference, UnumProvident agreed to adhere to the California definition of total disability which had been in effect since the 1942 appellate decision *Erreca v. Western States Life Insurance Company* (1942) 19 Cal.2d 388, yet had been uniformly ignored by UnumProvident and its subsidiaries when considering an individual "own occupation" total disability claim in California. Under the California agreement reached in October of 2005, UnumProvident agreed to apply to the following definition of "total disability" in the context of "own occupation" individual disability claims: Own occupation disability is the inability to perform with reasonable continuity the substantial and material acts necessary to pursue the insured's usual occupation in the usual and customary way.

23. Another component of the RSA was that defendants agreed to implement the "Claim Reassessment Process." Under the Claim Reassessment Process, defendants were required to reassess the disability claims of certain claimants who had their claims denied by defendants. In doing so, they were required to act in good faith in the reassessment process, so that claims that were wrongfully denied, such as the claims made by Dr. May, would be paid. Dr. May was a third party beneficiary of the RSA as well as the agreement entered into between defendants and the California Department of Insurance.

- 8 -
COMPLAINT
May v. Unum Provident Corporation, et al./USDC Northern District Case No.

000320

24. Dr. May received a letter dated February 17, 2005 from defendants notifying him that his Business Overhead Policy claim (No. 520038042201) was eligible for reassessment under the Claim Reassessment Process. Although defendants notified Dr. May that his Business Overhead Policy claim was eligible for reassessment, defendants never notified Dr. May that his Individual Disability Policy claim was also eligible for reassessment. Dr. May submitted the information defendants requested for their reassessment of his claim in accordance with the procedures prescribed by defendants.

25. As part of the reassessment process, defendants sent Dr. May a letter dated April 10, 2007, informing him that they had completed the reassessment of their denial of his Business Overhead Policy claim. Defendants stated that their original decision to deny his claim should be overturned. Defendants explained that Dr. May previously indicated that he was unable to work as a gastroenterologist as of May 1, 2000 because of his pustular psoriasis, but that he made significant improvement by July 1, 2000. As such, defendants determined that they would provide Dr. May with the full business overhead expenses for the period of May 1, 2000 - July 31, 2000. Dr. May subsequently received four checks, all dated April 10, 2007, in the amounts of $3,500.00, $3,500.00, $4,281.30 and $116.67 for a total of $11,937.97. In performing the reassessment, defendants failed to take into account the fact that Dr. May had been and continued to be totally disabled from his regular occupation within the meaning of both policies.

26. On or about April 15, 2007, Dr. May wrote defendants and inquired about the status of his separate Individual Disability Policy claim (No. 5200863857-001) in light of the fact that defendants now determined that he was, in fact, disabled within the meaning of the Business Overhead Policy.

27. On May 7, 2007, defendants wrote and informed Dr. May that his Individual Disability Policy claim would not be included in the reassessment, wrongfully claiming that he had failed to follow reassessment claims procedures. The statement was deceitful, fraudulent and untrue. However, at no time did defendants ever inform Dr. May that his Individual Disability Policy claim was eligible for reassessment under the Claim Reassessment Process. Though defendants acknowledged in writing for the first time on April 7, 2007, that Dr. May

was, in fact, totally disabled within the meaning of his Business Overhead Policy, they wrongfully refused to reassess Dr. May's Individual Disability Policy claim in breach of the RSA and the contract with the California Department of Insurance, and wrongfully withheld benefits due and owing under his individual disability policy.

28. To date, Dr. May has only received $11,937.37 for the Business Overhead Policy. Not only did defendants fail to properly reassess Dr. May's Business Overhead Policy claim, they also wrongfully refused to reassess his Individual Disability Policy claim and have wrongfully withheld benefits due and owing.

29. At all times herein relevant, Dr. May has been entitled to benefits under his Individual Disability and Business Overhead Policies issued by defendants, and defendants have been obligated to make such payments under said policies and under the laws of the State of California.

## FIRST CAUSE OF ACTION

**(Breach of Contract as to All Defendants)**

As and for a separate and distinct First Cause of Action against defendants, Dr. May alleges:

30. Plaintiff re-alleges and incorporates by this reference each and every allegation of paragraphs 1 through 29, inclusive, herein.

31. Notwithstanding their obligation to do so under the terms and conditions of Dr. May's Individual Disability and Overhead Disability policies, defendants, and each of them, have wrongfully failed and refused, and continue to fail and refuse, to pay Dr. May monies owing to him, despite demand therefore. Said failures and refusals constitute a material breach of contract.

32. As a direct and proximate result of said breach, plaintiff was and continues to be damaged in a sum in excess of the jurisdictional minimum for past benefits owing.

## SECOND CAUSE OF ACTION

**(Breach of Covenant of Good Faith and Fair Dealing as to All Defendants)**

As and for a separate and distinct Second Cause of Action against defendants, Dr. May

alleges:

33. Plaintiff re-alleges and incorporates by this reference each and every allegation of paragraphs 1 through 32, inclusive, herein.

34. At all times herein relevant, defendants agreed to act in good faith and deal fairly with Dr. May when they entered into the insurance policies and accepted premiums from him. Defendants, and each of them, nevertheless, refused and failed to act in good faith and deal fairly with Dr. May and in doing so, breached their fiduciary obligations.

35. In the absence of a reasonable basis for doing so, and with full knowledge and/or reckless disregard of the consequences, defendants failed and refused to pay policy benefits as is required under the terms and conditions of the policy and the laws of the State of California. The failure to pay benefits under the aforementioned policies constitutes a wrongful withholding of benefits.

36. Furthermore, defendants, and each of them, engaged in and continue to engage in a course of conduct to further their own economic interests, in violation of their contractual and fiduciary obligations to Dr. May, including but not limited to:

   a. Misrepresenting pertinent policy provisions and coverages;
   b. Engaging in unreasonable delays in acting upon the claim;
   c. Conducting an unreasonable and improper investigation of the claim;
   d. Violating provisions of the California Insurance Code, including, but not limited to Section 791.03(h);
   e. Violating the Unfair Claims Settlement Practices Regulations, California Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, Section 2695.1 et seq.;
   f. Engaging in unfair claims practices in handling the claim of other similarly situated insureds; and
   g. Engaging other wrongful and illegal conduct.

37. The conduct of defendants, and each of them, as herein alleged, is part of a scheme, plan or design originated at Provident Life and Accident Insurance Company in the

early 1990's, which has been carried forward to the present. The handling of Dr. May's claim is part of a larger pattern and practice involving similarly situated policyholders in California and throughout the United States. Defendants, and each of them, willfully and intentionally conspired to carry out the scheme, plan or design knowing full well that the scheme, plan or design would necessarily involving depriving policy holders of benefits due and owing and would cause injury or harm. Notwithstanding such knowledge, defendants, and each of them agreed to carryout the scheme, plan or design to maximize the financial return to defendants. The course of conduct was undertaken by defendants, and each of them, with a reckless and conscious disregard of the financial and emotional circumstances of the policyholders, including Dr. May. The course of conduct was pursued by defendants, and each of them, intentionally, maliciously and/or fraudulently to further their own economic interests at the expense of Dr. May's economic interests, mental health and well-being.

38. As a direct and legal result of the aforementioned unreasonable and bad faith conduct of defendants, and each of them, Dr. May has suffered and will continue to suffer the loss of benefits due and owning under the policies and interest on the amounts due and owning. In addition, because of the bad faith conduct of defendants, and each of them, he is entitled to the present value of future benefits owing under the policies. As a further, direct and legal result of the bad faith conduct of defendants, and each of them, Dr. May was compelled to retain legal counsel to obtain benefits under the polices; defendants, and each of them, are liable to Dr. May for all attorneys' fees and costs incurred in connection with securing the payment of all benefits due and owing. As a further direct and legal result of the bad faith conduct of defendants, and each of them, Dr. May has suffered anxiety, worry, mental and emotional distress, all to his general damage.

39. The conduct of defendants, and each of them, was malicious, oppressive and/or fraudulent under California Civil Code Section 3294, thereby entitling Dr. May to an award of punitive damages based on the actual damages, the reprehensibility of the conduct of defendants, and the net worth of each defendant, according to proof.

40. The scheme, plan or design described above was concocted by management within

UnumProvident and was known to managers and directors of each of the defendants. Managers and directors, up to the highest levels of defendants were fully aware of the scheme, plan or design with respect to the handling, investigation and evaluation of claims made under individual disability policies, yet continued to authorize, direct, and approve such conduct, notwithstanding punitive damage awards and regulatory enforcement, as described above.

## THIRD CAUSE OF ACTION

### (Fraud as to All Defendants)

As and for a separate and distinct Third Cause of Action against defendants, and each of them, plaintiff alleges:

41. Plaintiff re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 40, inclusive, herein.

42. In the polices issued by defendants to Dr. May, defendants made material representations of fact, that they would, in the event of total or partial disability, pay certain defined benefits to Dr. May.

43. The representation of material facts to Dr. May by defendants, and each of them, was false, in that said defendants did not intend to and do not intend to pay such monies, notwithstanding Dr. May's entitlement thereto, pursuant to the terms and conditions of the policies and under the laws of the State of California.

44. Defendants, and each of them, knew that said representations were false and fraudulent at the time they were made, and made such false and fraudulent to induce Dr May to rely thereon to his detriment. On information and belief, Dr. May alleges that said defendants have made similar false and fraudulent representations to other insureds who have also justifiably relied thereon to their detriment.

45. Dr. May, at the time said representations were made, was ignorant of their falsity and believed them to be true.

46. Dr. May reasonably and justifiably relied on said representations, in view of the superior knowledge of defendants, and each of them, and the fiduciary relationship between the parties.

47. Based upon said representations, Dr. May was induced to apply for and enter into contracts for disability income insurance and to pay premiums therefore. Had Dr. May known the true facts, he would not have taken such action.

48. As a direct and legal result of the conduct of defendants, and each of them, Dr. May has suffered, and will continue to suffer damages, plus interest, and other economic and consequential damages for a total amount to be shown at the time of trial.

49. As a further direct and legal result of the conduct of defendants, and each of them, Dr. May has suffered anxiety, worry, mental and emotional distress, all to his general damage, in a sum to be determined at the time of trial.

50. The conduct of defendants, and each of them, described herein was intended by such defendants to cause injury to Dr. May, or was despicable conduct carried on by the defendants with a conscious disregard of his rights, subjected him to cruel and unjust hardship in conscious disregard of his rights, and was an intentional misrepresentation, deceit, or concealment of a material fact know to the defendants with the intention to deprive him of money, or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code Section 3294, thereby entitling him to punitive damages in an amount appropriate to punish or set an example of defendants.

## FOURTH CAUSE OF ACTION

**(Violation of Business and Professions Code Section 17200 et seq. as to All Defendants)**

As and for a separate and distinct Fourth Cause of Action against defendants, and each of them, plaintiff alleges:

51. Plaintiff re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 50, inclusive, herein.

52. California Business and Professions Code Section 17200 *et seq.* was enacted by the California State Legislature in 1933 to protect businesses from the unfair business practices of competitors. By the late 1970's, the statute was expanded to protect consumers from any "unlawful, unfair or fraudulent business act or practice" and any "unfair, deceptive, untrue or misleading advertising."

53. Under California Business and Professions Code Section 17203, "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

54. Under California Business and Professions Code Section 17201, defendants, and each of them, is a "person" as defined by the statute.

55. The conduct of defendants, and each of them, as alleged herein, constitutes "unfair competition" under California Business and Professions Code Section 17200, which includes, "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ...."

56. As a result of the conduct of defendants, and each of them, as herein alleged, Dr. May and other policyholders have suffered the loss of substantial amounts of money. Under California Business and Professions Code Section 17204, Dr. May is a "person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Dr. May is a direct victim of the scheme, plan or design undertaken by Defendants as herein alleged. Accordingly, the conduct of defendants, and each of them, was a violation of the terms and conditions of the policies issued by defendants to Dr. May.

### FIFTH CAUSE OF ACTION

**(Intentional Infliction of Emotional Distress as to all Defendants)**

As and for a FIFTH CAUSE OF ACTION, plaintiff individually complains against defendants and alleges:

57. Plaintiff re-alleges and incorporates by this reference each and every allegation of paragraphs 1 through 56, inclusive, herein.

58. At all times herein relevant, Dr. May has been under the care of physicians who hold the opinion that he is totally disabled from working as a gastroenterologist. At all times

herein relevant, defendants, and each of them, have known that Dr. May is totally disabled from his regular occupation and that he is entitled to benefits as promised in his policies.

59. On or about February 18, 2000, Dr. May submitted claims with defendants under his Individual Disability and Overhead Business polices. Dr. May also notified defendants that he would be shutting down his practice on May 1, 2000 due to his totally disability.

60. Since February 18, 2000, Dr. May has cooperated and complied with all reasonable requests made by defendants in connection with his claims for disability benefits, even to the extent of providing defendants with the name, address and telephone number of each and every treating physician, signing authorizations for the release of records, providing defendants with privileged and private material and submitting to an independent medical examination. Dr. May's physician even submitted multiple letters to defendants wherein he opined that Dr. May was totally disabled.

61. However, rather than adhering to the mandate of well-established appellate case law in the State of California, as well as the provisions of the California Insurance Code and the California Code of Regulations concerning the handling of claims, which at all times was known to the managers and employees of defendants who handled Dr. May's claim, the employees and managers of defendants handling Dr. May's claim instead intentionally chose to follow the so-called "best practices" established by Provident Life and Accident Insurance Company in the early 1990's, which led to numerous lawsuits, punitive damage verdicts, and regulatory enforcement, as described above. Knowing full well that they had a duty to conduct a thorough investigation of the claim, giving as much consideration to the interests of Dr. May as to the interests of defendants, the employees of defendants conducted a one-sided investigation with the intent to falsely manufacture a dispute sufficient to either pay a small fraction of the actual value of the claim or to deny the claim outright. In doing so, defendants, and each of them, ignored all descriptions of restrictions, limitations and job duties as described by Dr. May; ignored the findings and opinions of the treating physicians; used their own biased "independent" medical examiner and ignored clear evidence supporting the claim. Instead of conducting an investigation and evaluating the matter by giving as much consideration to the

interests of Dr. May as to the interests of defendants, the employees and managers of defendants set this matter up for a denial by purposefully ignoring evidence and avoiding a thorough investigation calculated to support the claim.

62. In doing so, defendants, and each of them, ignored all descriptions of restrictions, limitations and job duties as described by Dr. May; ignored the findings and opinions of the treating physicians; failed to secure an independent medical examination by an unbiased and qualified examiner out of fear that the examiner would affirm the disability; ignored clear evidence supporting the claim; and relied on opinions rendered by non-treating record reviewers who were employed by defendants ostensibly as "consultants," yet were charged either expressly or impliedly with the task of concocting reasons to deny claims.

63. At all times herein relevant, defendants, and each of them, have known that Dr. May is totally disabled from his regular occupation and that he is entitled to benefits as promised in his policies.

64. Despite defendants' knowledge of Dr. May's total disability from his regular "own occupation," defendants intentionally denied his claim in its entirety in bad faith.

65. By their outrageous course of conduct, defendants, and each of them, either intended to cause Dr. May to suffer emotional distress, or acted with reckless disregard of the probability of causing Dr. May to suffer severe emotional distress.

66. As a direct and legal result of the aforementioned conduct of defendants, Dr. May has suffered and will continue to suffer the loss of benefits due and owning under the policies and interest on the amounts due and owning. In addition, because of the bad faith conduct of defendants, and each of them, he is entitled to the present value of future benefits owing under the policies. As a further direct and legal result of the aforementioned conduct of defendants, Dr. May was compelled to retain legal counsel to obtain benefits under the polices; defendants, and each of them, are liable to Dr. May for all attorneys' fees and costs incurred in connection with securing the payment of all benefits due and owing. As a further direct and legal result of the bad faith conduct of defendants, and each of them, Dr. May has suffered anxiety, worry, mental and emotional distress, all to his general damage.

67. The conduct of defendants in defrauding Dr. May was intended to cause injury or other harm to Dr. May, was despicable conduct carried on by defendants with a conscious disregard of Dr. May's rights, subjected him to a cruel and unjust hardship, and was an intentional misrepresentation of fact and/or intentional concealment of a fact material to the parties. Therefore, the conduct of defendants was malicious, oppressive and/or fraudulent sufficient to justify the imposition of punitive damages.

## SIXTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress as to all Defendants)

As and for a SIXTH CAUSE OF ACTION, plaintiff individually complains against defendants and alleges:

68. Plaintiff re-alleges and incorporates by this reference each and every allegation of paragraphs 1 through 67, inclusive, herein.

69. At all times herein relevant, defendants, and each of them, agreed to act in good faith and deal fairly with Dr. May when they entered into the insurance policies and accepted premiums from him. Nevertheless, defendants, and each of them, refused and failed to act in good faith and deal fairly with Dr. May and in doing so, breached their fiduciary obligations to him.

70. In the absence of a reasonable basis for doing so, and with full knowledge and/or reckless disregard of the consequences, defendants failed and refused to pay policy benefits as is required under the terms and conditions of the policy and the laws if the State of California. The failure to pay benefits under the aforementioned policies constitutes a wrongful withholding of benefits and a breach of defendants' fiduciary duties owed to Dr. May.

71. Defendants, and each of them, engaged in, and continue to engage in a course of conduct to further their own economic interests, in violation of their contractual and other fiduciary duties to policyholders and claimants, including Dr. May.

72. The wrongful course of conduct was undertaken by defendants, and each of them, with a reckless and conscious disregard of the financial and emotional circumstances of the policyholders, including Dr. May. The wrongful course of conduct was pursued by defendants,

and each of them, intentionally, maliciously and/or fraudulently to further their own economic interests at the expense of Dr. May economic interests, mental health and well-being.

73. By their unreasonable and bad faith conduct, defendants, and each of them, acted negligently and caused Dr. May to suffer severe emotional distress.

74. As a direct and legal result of the defendants' aforementioned conduct, Dr. May has suffered and will continue to suffer the loss of benefits due and owning under the policies and interest on the amounts due and owning. In addition, because of the bad faith conduct of defendants, and each of them, he is entitled to the present value of future benefits owing under the policies. As a further direct and legal result of the aforementioned conduct of defendants, Dr. May was compelled to retain legal counsel to obtain benefits under the polices; defendants, and each of them, are liable to Dr. May for all attorneys' fees and costs incurred in connection with securing the payment of all benefits due and owing. As a further direct and legal result of the bad faith conduct of defendants, and each of them, Dr. May has suffered anxiety, worry, mental and emotional distress, all to his general damage.

WHEREFORE, Dr. May prays for relief as follows:

1. Trial by jury;

2. Damages for the wrongful withholding of benefits under the policies issued by Unum, plus interest, including prejudgment interest, and other economic and consequential damages, including but not limited to, all past benefits due and all future benefits, in a sum to be determined at trial;

3. General damages for mental and emotional distress in a sum to be determined at trial;

4. Attorney's fees incurred to obtain policy benefits in an amount to be determined at trial;

5. Punitive and exemplary damages in an amount appropriate to punish or set an example of defendant;

6. For a declaration from the court finding that UnumProvident is in violation of the terms and conditions of RSA and the agreement made with the California Department of

Insurance;

7. Costs of suit incurred herein; and

8. Such other and further relief as the Court may deem just and proper.

Dated: April, 8, 2009                              **KNOX RICKSEN LLP**

By: /s/ Thomas E. Fraysse
Thomas E. Fraysse
Attorneys for Plaintiff
SEAN S. MAY